JOHN L. MOSES, Chairman, etc., *v.* E. J. SANFORD.

DAMAGES. *Ferry and wharf landing. Condemned for county bridge.* Where a small part of a strip of land along a river bank used as a ferry and wharf landing is condemned for the purpose of erecting thereon the pier of a county bridge across the river, the owner of the land is entitled to be paid the value of the land taken, and the damages for the injury to the adjoining land as a wharf landing, but not to the loss by the depreciation of the profits of the ferry franchise by the opening of the bridge; the franchise itself and its exercise not being impaired by the existence of the pier.

FROM KNOX.

Appeal in error from the Chancery Court at Knoxville. W. B. STALEY, Ch.

W. P. WASHBURN, HOUK & GIBSON and J. W. CALDWELL for complainant.

HENDERSON & JOUROLMON and W. M. BAXTER for defendant.

COOPER, J., delivered the opinion of the court.

The county of Knox having built one of the piers of a bridge across the Holston at Knoxville upon the land of the defendant, he brought an action of ejectment for its recovery, whereupon this bill was filed to enjoin the action. The chancellor, upon final hearing, perpetually enjoined the defendant from prosecuting his action of ejectment at law, but made a reference to the master to ascertain the value of the land taken for the bridge, and the incidental damages after deducting the incidental benefits. Upon appeal, this court affirmed the decree of perpetual injunction, and gave the defendant his option to ascertain his damages for the appropriation of the land for public purposes either in this suit, or at law: *Moses* v. *Sanford,* 2 Lea, 655. It was thereupon ordered by this court that the cause be remanded "to ascertain the value of the land appropriated for bridge purposes, if the respondent elect to adopt that method of ascertaining the value of the land." The defendant having so elected, the master reported the value of the land to be $113.55, and the incidental damages exclusive of the ferry privileges at $250, and with those privileges at $2,186.45. The defendant excepted to the valuation of the land at $113.55. The chancellor disallowed the exception, and gave the defendant a decree for the sum of $113.55, charging the county with all the costs except the costs of two useless depositions taken by defendant, which he ordered the defendant to pay. The Referees have reported that in addition to the actual value of the

land as given by the chancellor the defendant be also allowed $250 as found by the master for incidental damages, and that the costs be equally divided between the litigants. Both parties have excepted.

By the Constitution it is provided that no man's property shall be taken, or applied to public use, without just compensation being made therefor: Const., Art., 1, sec. 21. And the statute which points out the mode of assessing damages for property so taken, says: "In estimating the damages, the jury shall give the value of the land without deduction, but incidental benefits, which may result to the owner by reason of the proposed improvement, may be taken into consideration in estimating the incidental damages." The statute, in effect, embodies the substance of the decision of this court in *Woodfolk* v. *Nashville & Chattanooga Railroad Company*, 2 Swan, 422. It was there held that where the Legislature, in the exercise of the power conferred by the Constitution, authorized the appropriation of private property to public use, it cannot deprive the owner of the "just compensation" for his property provided by the Constitution. That compensation consists of the value of the property, assessed by a competent tribunal, to be paid in money. The measure of compensation would be the fair cash value of the land, if the owner were willing to sell, and the company desired to buy that particular quantity, at that place and in that form. The Legislature might, however, make any regulations it thought right and proper for an account or estimate of incidental loss or damage, and authorize the incidental benefits and ad-

vantages to be set off against the damage. The statute has been construed to be in harmony with the decision: *Paducah & Memphis Railroad Company* v. *Stovall,* 12 Heis., 1; *Mississippi Railway Company* v. *McDonald,* 12 Heis., 54.

The proof shows that the defendant owns a narrow strip of land on the banks of the Holston river, about 1200 feet in length and perhaps 90 feet in width, the value of which consists almost entirely in its ferry and wharf privileges. Two-thirds of the strip in length is used for a wharf landing, and there is a ferry landing about 125 yards from that part of the land occupied by the bridge pier. The pier takes about 26 feet frontage near the middle of the strip, and at a point where the bank of the river was too steep to be used. The actual value of the land taken does not exceed the amount found by the master, and this sum was properly allowed. There is proof tending to show that the land immediately below the pier is incidentally depreciated for wharfage purposes by reason of the fact that rafts and flat-boats are compelled to go so far out in the stream because of the pier that they cannot readily be brought to land just below it. The testimony shows that the incidental damage thus occasioned is assessed at $250, and, as there are no incidental benefits to the land arising from the erection of the bridge not common to all other lands in the vicinity, this sum ought also to be allowed the defendant. The chancellor thought that the order of this court limited the reference to the value of the land, but the opinion of the court shows that the de-

fendant was to have the option to ascertain his damages for the appropriation of the land either in this suit, or at law, and the words "value of the land" as used in the order, was not intended to limit the damages. They were used in the sense of compensation for the land under the statute.

The defendant insists, however, that he is also entitled to damages for injury to his ferry privileges by the erection of the bridge. The ferry landing was about 125 yards from the pier, and the defendant himself testifies, as do all the witnesses who speak on the subject, that "the ferry was not injured" by the pier of the bridge. That is to say, the ferry landing and the ferry franchise remained precisely as before, not in the least affected by the fact that 26 feet of the defendant's strip of land, 125 yards from the ferry landing, were appropriated to the public use, and the pier of a bridge erected thereon. The defendant's ferry franchise, and the exercise of it by the running of boats across the river, and landing them at the usual landing places, remained unimpaired. The profits of the ferry franchise were, however, destroyed, not by the condemnation of the land or the existence of a bridge pier erected thereon, but by the opening of the bridge for travel across the river. The land and the use of it for ferry purposes were not affected, but the value of the ferry franchise was depreciated by the new mode of travel created for the citizens by the proper public authority. And the question is narrowed down to this, is the loss of the profits of a franchise an incidental damage within the meaning of the statute, when

the exercise of that franchise, as well as the franchise itself, is not impaired by the condemnation of the property to public use, or the existence of the pier?

If a third person owned a ferry franchise exercised upon land either above or below the land condemned, it is clear that he could not claim damages by the condemnation, or the new mode of transit. If the defendant exercised his franchise on another lot than the land condemned, it is equally conceded he would be without remedy. The argument is that the mere fact of the exercise of the franchise by using a part of the lot of land condemned as a landing, the use being in no wise affected by the condemnation, makes a difference and gives the right to damages. But it was expressly held in *Woodfolk* v. *Railroad Company, ut supra,* that the incidental benefit or injury to the party, whose land was taken by the projected improvement, common to all his neighbors, would not be an element of incidental loss or advantage. For it would be unjust to compensate him for the one, or to charge him with the other, when no account is taken of such incidental benefits and injuries with other citizens who receive or feel them equally with himself, but whose lands do not chance to be taken. And, therefore, says Judge Cooley, " In making the estimate of damages, there must be excluded from consideration those benefits which the owner receives only in common. with the community at large in consequence of his ownership of other property, and also those incidental injuries to other property such as would not give to other persons a right to compensation, while allow-

Moses *v.* Sanford.

ing those which directly affect the value of the re-
mainder of the land not taken": Const. Lim., 710.
A franchise, although exercised upon the land, is
"other property" within the rule, if the exercise of
the business be not affected by the condemnation. For,
says the same author, "No one has a vested right to
be protected against consequential injuries arising from
a proper exercise of public powers. The construction
of a new way, or the discontinuance of an old one
may very seriously affect the value of adjacent prop-
erty, but in neither case can the parties, whose in-
terests may be injuriously affected enjoin the act, or
claim compensation from the public": Const. Lim.,
481. The injury in the case before us was not by the
erection on the condemned land, but by the opening
of a new way by the county court, the proper public
authority. It is *damnum absque injuria,* and must be
borne accordingly.

A decree will be entered accordingly for the two
sums reported by the Referees, with interest from the
date of the master's report, and all the costs of the
cause, in favor of the defendant against the county.